UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Victor G. Hall,
    Petitioner,

    v.                                            Civil Action No. 1:09-CV-291

William H. Sorrell,
    Respondent.

## REPORT AND RECOMMENDATION
(Docs. 3, 12, 13 and 18)

On December 23, 2009, petitioner Victor Hall filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Briefly stated, Hall claims that his Fourth, Fifth, Sixth and Fourteenth Amendment rights have been violated, and that his convictions for aggravated sexual assault should be vacated. The respondent has moved to dismiss the petition because it allegedly includes unexhausted claims.

Currently before the Court, in addition to the motion to dismiss, are a series of motions filed by the petitioner. These include a motion for appointment of counsel (Doc. 3), a motion for a protective order that would bar the Department of Corrections ("DOC") and the Office of the Vermont Attorney General ("AGO") from reading Hall's computer files (Doc. 12), a motion for default judgment (Doc. 13), and a motion to stay pending the appointment of counsel (Doc. 18). Hall has also filed an opposition to the motion to dismiss, but the respondent's reply is not yet due. Consequently, the Court need only

address Hall's pending motions at this time.

I.    **Motion For Protective Order**

Hall has moved the Court to bar the DOC and AGO from "reading, distributing, or storing computer files seized from Petitioner – without cause and in violation of [the] attorney-client privilege, due process, and Petitioner's First Amendment rights – at the correctional facility where he is incarcerated." (Doc. 12 at 1.) The claim arises out of the fact that, on January 15, 2010, the DOC removed all computers from facilities housing Vermont inmates. The prison facilities involved included the privately-owned prison in Beattyville, Kentucky where Hall was incarcerated when he filed his motion.

Since his transfer to Kentucky in April 2008, Hall has allegedly been using the prison law library computers to "conduct legal research, gather information, make notes for his use, and enter into various legal actions . . . ." *Id.* When the computers were taken away, the reason given was "'unplanned, necessary maintenance.'" *Id.* at 2. Hall alleges that the maintenance claim "is a smokescreen," and that all files stored on the computers are going to be reviewed by the AGO. *Id.* at 3-4. Specifically, his motion claims that

> [a]ccording to the Vermont DOC, it is reading all inmates' legal documents and research, attorney/client correspondence, and other records and information. It is doing this without proper discovery. It is doing this while withholding the files from inmates, preventing them from pursuing legal matters, especially matters currently pending in waiting courts . . . . And it plans to screen out and discard any legal effort it feels an inmate shouldn't be working on . . . .

*Id.* at 4.

In response to Hall's motion, the respondent has submitted an affidavit from Carol

Callea, the DOC's Director of Legal Education/Inmate Access to Courts. (Doc. 14-1.) Callea testifies that during the week of January 10, 2010, while out of state at a workshop, she received a call from DOC Commissioner Andrew Pallito.

> Also on the phone were the Deputy Commissioner, Lisa Menard, and Peter Canales from the Agency of Human Services. The Commissioner stated that an inmate at the Northern State Correctional Facility provided a document containing information of a highly confidential nature to Peter Canales. The inmate alleged that the document had been printed on a law library computer. I requested that the facilities be advised to pull all the power cable from the computers and that when I returned to Vermont on January 15, 2010 I would begin forensics on each law library computer.
>
> On or about January 14, 2010, I received an email from the Commissioner stating that upon his direction all of the law library computers were removed from the Vermont libraries . . . . I later received an email from the Deputy Commissioner stating that Bob Kupec, Facilities Executive, had contacted the CCA Wardens in Kentucky and Tennessee and requested that all law library computers be sent back to Vermont.

*Id.* at 5-6.

Since the return of the computers to Vermont, the IT department for the Vermont Agency of Human Resources ("AHS/IT") has allegedly inventoried and stored the computers and hard drives. Callea testifies in her affidavit that "[o]n or about January 27, 2010, I received a call from the Assistant Warden, David Frye, from the Lee Adjustment Center (LAC) in Kentucky. He asked if I wanted the flash drives returned." *Id.* at 6. Flash drives, while contraband in Vermont facilities, had been issued to law librarians in Kentucky "for the specific purpose of backing up inmate files in the event of a computer melt down or to transfer inmate files to the law librarian computer in order to make discs for an inmate returning to Vermont." *Id.* at 3. Callea informed Frye that she believed

3

"everything" needed to be returned, and the flash drives were subsequently sent to Vermont. *Id.* at 6. It was later determined that a new computer system would be put in place, and that flash drives would no longer be necessary. Accordingly, the flash drives were cleared of their data. *Id.* at 7.

By February 4, 2010, all inmate files had been copied onto the DOC server. Callea explains that "[t]he original hard drives are being stored in their original configuration to include inmate files. I have organized retrievable files provided to me by AHS/IT . . . by inmate name to facilitate ease of return." To the extent that any of the content has been reviewed by the DOC, Callea attests that "I have opened to review files for the specific purpose of determining the owner/author if that information was not discernible by file name, was not saved in an inmate file, or the folder was not in an inmate's name . . . ." *Id.* at 7. Callea has also conducted word searches on "files copied from the hard drives . . . for the purpose of determining if documents existed that would/could be considered a safety or security risk." *Id.* at 8. Callea testifies that she has "not read all inmate files," and that "[n]o inmate file has been deleted or distributed with the exception of files copied and already returned to Kentucky inmates who saved files on the Vermont computers." *Id.* at 7-8.

With regard to Hall's claim that the AGO will be reviewing inmate files, including privileged information, Callea states that "[o]nly I, AHS/IT and Michael Touchette [a DOC employee with special training in computer forensic analysis] have access to the secured hard drives and inmate files." *Id.* She further states that "[n]either the Legal

Division of the Department of Corrections nor the Vermont Attorney General's Office has been privy to inmate files that have been retrieved by AHS/IT or Michael Touchette and copied to my secure folder." *Id.* at 9.

A protective order is typically entered in the context of a discovery request, where a party seeks Court protection from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Here, Hall is asking the Court to enjoin the DOC and the AGO from reviewing and/or deleting his computer files. Accordingly, the Court should construe the motion as a request for injunctive relief. *See, e.g., Huftile v. Vognsen*, 2007 WL 627908, at *1 (E.D. Cal. Feb. 27, 2007) (construing plaintiff's request for an order requiring officials at state hospital to have computer secured so that files could be retrieved and protected); *Brillon v. Figueroa*, 2007 WL 2463259, at *8-*9 (W.D. Okla. Aug. 27, 2007) (construing motion for protective order that would prevent Vermont DOC from updating computers such that they would no longer accept his floppy disk).

In this Circuit the standard for injunctive relief is well established. To warrant preliminary injunctive relief, in the form of either a preliminary injunction or temporary restraining order, the moving party must demonstrate that it will be irreparably harmed in the absence of the requested relief and that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *See Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003).

Hall has failed to carry his burden for an award of preliminary injunctive relief. His claim is that the DOC and the AGO will be reviewing his computer files and deleting whatever items they deem appropriate. His allegation is based on a hearsay account of a conversation between Callea and the Kentucky prison's inmate library staff, in which Callea allegedly stated that

> she has provided the AGO with all of the files stored in the computers by inmates. She further indicated that all of the files (she estimated them to number over 160,000) would be <u>reviewed</u> by the DOC/AGO and that they would be returned at some indefinite time to each inmate only upon request, and only if they are files that the DOC/AGO determines . . . that an inmate is entitled to get [] back . . . .

(Doc. 12 at 3-4) (parenthetical and emphasis in original). In response to Hall's hearsay allegation, Callea confirms that she spoke with inmate Mark King, a legal assistant at the Kentucky law library, but that "[a]t no point during this conversation did I say or infer that the Attorney General's Office was given the law library computers or that they would now or ever be reviewing inmate files." (Doc. 14-1 at 10.) Indeed, as discussed above, inmate files have only been opened for limited purposes, such as identifying the file's owner, and are not being reviewed by anyone directly involved in litigation.

In reply to Callea's affidavit, Hall concedes that he may have been misinformed by King about the content of Callea's statements. (Doc. 16 at 1-2.) ("Only after Petitioner received a copy of Callea's affidavit . . . and showed it to King did King then say that he never actually heard Callea say such a thing on the phone to him."). However, Hall also calls the Court's attention to a memorandum from Callea that was distributed to the entire

6

Vermont inmate population on or about January 21, 2010. (Doc. 16-1.) In that memorandum, Callea explained that the DOC had made courts aware of the fact that computers had been temporarily removed from prison law libraries, and that this might affect inmates' ability to timely file court papers. Callea also stated that "I will be reviewing all inmate files that have been successfully retrieved from the computers [sic] hard drives to determine documents/reply motions, etc. that you may need sooner rather than later, " and that "[n]o inmate legitimate legal file will be disgarded." Hall argues that these latter statements imply (1) that inmate files were being read, and (2) that someone is reviewing the legitimacy of inmate files. (Doc. 16 at 4, 7.) He claims that these statements contradict Callea's affidavit, and that a protective order is still warranted.

Nothing in Callea's affidavit suggests wrongdoing by the DOC. Nor is her January 21, 2010 memorandum inconsistent with her affidavit. Callea states in her affidavit that she was reading inmate files for various purposes, including identifying the file's owner. She also states that the documents were being reviewed via word searches for security purposes. Her memo to inmates suggests that inmate files were also being reviewed for the purpose of identifying time-sensitive materials. In sum, the record indicates that in the course of reviewing inmate files for security purposes, Callea made a conscientious effort to preserve those files and identify any materials that might be needed in the near future.

While it is plain that some inmate files were opened and either read or reviewed, the Court sees nothing nefarious in the DOC's actions. Indeed, Hall has failed to

7

substantiate his initial claim that files were being reviewed by opposing counsel and selectively deleted. Accordingly, the Court should find that Hall has failed to show irreparable harm and sufficiently serious questions on the merits, and should DENY his motion for a protective order.[1]

Furthermore, there is no suggestion in the record that the temporary removal of computers from the Kentucky facility will prejudice Hall's ability to continue his litigation efforts. Hall himself acknowledges that the DOC Commissioner delivered a memo to Vermont Administrative Trial Court Judge Amy Davenport alerting her of the computer issue. This Court is also well aware of the situation. Consequently, to the extent that reasonable extensions of time need to granted, the courts will certainly take into account the period of time during which computers, and the files stored thereon, were unavailable to Vermont inmates. I therefore recommend that Hall's motion for a protective order (Doc. 12) be DENIED.

## II. Motion For Default Judgment

Hall has also moved for a default judgment. In *Bermudez v. Reid*, 733 F.2d 18 (2d Cir. 1984), the Second Circuit made clear that a default judgment should not be granted for a habeas petitioner without a court first reaching the merits of the underlying claim.

> [W]ere district courts to enter default judgments without reaching the merits of the [habeas petition], it would be not the defaulting party but the public

---

[1] Even if the Court were to use the "good cause" standard under Rule 26(c), Hall has failed to show that the files in question have been produced to counsel for the respondent, and that "good cause" exists for an order barring counsel from reviewing them. Fed. R. Civ. P. 26(c)(1).

> at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them. In this respect, default judgment in habeas proceedings differs from default in other civil cases.

*Bermudez*, 733 F.2d at 21.

Moreover, there is no basis for entering a default judgment. Hall claims that by seizing the prison library computers, the DOC has "fundamentally hijacked this civil action in order to gain an unfair advantage." (Doc. 13 at 2.) For reasons set forth above, the claim of a "hijack" is without merit.

Hall also contends that the respondent's failure to submit a response within the initial 30-day period constituted a default. On December 23, 2009, the Court ordered the respondent to answer the petition within 30 days. On January 19, 2009, the respondent filed a timely motion for an extension of time, and the Court granted an additional 30 days. On February 17, 2010, the respondent timely filed a motion to dismiss. Accordingly, the respondent has not run afoul of any deadlines. Because a default in a habeas corpus action is generally inappropriate, and given that there is no basis for a default in this case, Hall's motion for default judgment (Doc. 13) should be DENIED.

### III. Motion For Appointment Of Counsel

When Hall first filed his petition in December 2009, he also moved the Court for appointment of counsel. There is no constitutional right to appointed counsel when a person convicted of a crime brings a "collateral attack" upon his conviction or sentence. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). A § 2254 petition constitutes just

9

such an attack. Consequently, as in any civil case, the decision as to whether or not to assign counsel lies clearly within the Court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).

The factors to be considered by the Court when considering the appointment of counsel include the following: (1) whether the indigent's claims seem likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) whether the legal issues involved are complex; and (5) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (citing *Hodge v. Police Officers*, 802 F2d 58, 61-62 (2d Cir. 1986)); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). The Court must consider the issue of appointment of counsel carefully, because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks,* 114 F.3d at 392, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carmona*, 243 F.3d at 632 (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

In this case, the respondent has moved to dismiss on the ground that Hall's petition includes unexhausted claims. Specifically, the respondent submits that Hall has filed a petition for post-conviction relief in state court, that the claims in the state court petition are the same as those in his § 2254 petition, and the state court petition is still pending. Hall has filed a thorough response to the motion to dismiss, and the deadline for the respondent's reply has not yet expired.

Given the narrow question of exhaustion currently before the Court, there is no need to appoint counsel to represent the petitioner at this time. The issue before the Court is not complex, no factual investigation is required, and there will be no need for cross-examination. Moreover, if the respondent's recitation of the procedural posture of the case is accurate, Hall's chances of having his current § 2254 petition reviewed on the merits appear to be slim.[2] The motion for appointment of counsel (Doc. 3) is therefore DENIED without prejudice, and Hall's motion to stay the case pending the appointment of counsel (Doc. 18) is also DENIED.

## IV. Conclusion

For the reasons set forth above, I recommend that Hall's motion for a protective order (Doc. 12) and for a default judgment (Doc. 13) be DENIED. Hall's motion for appointment of counsel (Doc. 3) is DENIED without prejudice, and his motion to stay pending appointment of counsel (Doc. 18) is DENIED.

---

[2] That said, the Court offers no opinion at this time with respect to the ultimate merit of the respondent's motion to dismiss.

Dated at Burlington, in the District of Vermont, this 3rd day of March, 2010.

*/s/John M. Conroy*
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).